## BERRY v. STATE OF INDIANA.

[No. 24,737.    Filed January 26, 1926.]

1. INTOXICATING LIQUORS.—*Evidence held sufficient to sustain conviction for unlawfully transporting intoxicating liquor in automobile.*—Evidence *held* sufficient to sustain conviction for unlawfully transporting intoxicating liquor in an automobile. p. 218.

2. SEARCHES AND SEIZURES.—*After lawful arrest of person for violating traffic ordinance, his automobile may be searched, and intoxicating liquor found therein is competent evidence.*— After the lawful arrest of a person for violating a traffic ordinance of a city, the arresting officer may search the automobile in which the accused was riding at the time of the arrest, and any intoxicating liquor found therein may be used as evidence in prosecution for unlawfully transporting intoxicating liquor in an automobile. p. 218.

From Marion Criminal Court (55,951); *James A. Collins*, Judge.

Hugh Berry was convicted of unlawfully transporting intoxicating liquor in an automobile, and he appeals. *Affirmed.*

*T. Ernest Maholm*, for appellant.

*U. S. Lesh*, Attorney-General and *Mrs. Edward Franklin White*, Deputy Attorney-General, for the State.

WILLOUGHBY, J.—This was a prosecution brought by appellee against the appellant by affidavit filed in the criminal court of Marion county on January 22, 1924, wherein the appellant was charged with unlawfully tranporting intoxicating liquor in an automobile, in the county of Marion, State of Indiana.

The affidavit alleges that the appellant on or about December 24, 1923, did at and in the county of Marion, State of Indiana, then and there unlawfully, knowingly and feloniously transport intoxicating liquor in an automobile within the county of Marion and state aforesaid.

The appellant waived arraignment and entered a plea of not guilty. The cause was tried upon the issues thus joined, by the court without the intervention of a jury. The court found the appellant guilty as charged. The appellant filed a motion for a new trial which was overruled and to which ruling the appellant at the time excepted. Judgment was entered, on the finding of the court, that appellant be imprisoned in the Indiana state farm for a term of not less than one nor more than two years. The appellant appeals from such judgment and assigns as error that the court erred in overruling his motion for a new trial.

The appellant claims that the finding of the court is contrary to law, and is not sustained by sufficient evidence. Also that the court erred in permitting Charles

Viles and two other witnesses for the state to testify, over defendant's objections as to the contents of the automobile driven by the defendant, and as to the contents in the said touring car; for the reason that said touring car was being driven upon a public highway and that the officer, Charles Viles, stopped said touring car automobile and opened the doors thereof and seized the contents thereof and took possession of the contents thereof, and that said officer, at the time had no warrant for the arrest of the defendant and no search warrant authorizing the search of the touring car automobile or the seizure of the contents thereof. And that the court erred in permitting these officers as witnesses for the state to testify concerning the finding of intoxicating liquor in defendant's touring car automobile; and that all of said testimony was obtained by the officer who made the search and seizure without any warrant of any kind for the arrest of this defendant, and without any search warrant authorizing the search of the touring car automobile in which the intoxicating liquor which was testified about is claimed to have been found.

Appellant claims that there was no evidence to sustain the finding of the court, except what was unlawfully obtained by an unreasonable search and seizure in violation of appellant's constitutional rights.

The following evidence appears in the record: Charles A. Viles, a witness on behalf of the state, testified as follows: "My name is Charles A. Viles. I am a police officer, of the city of Indianapolis. I arrested William Cambron and Hugh Berry about seventy-five or eighty feet probably ninety feet north of Washington street on Capitol avenue. The defendants at the time had violated a traffic rule. They were in an automobile going east on Washington street and went to turn north on Capitol avenue. The traffic was

coming west on Washington street at the time and in place of their stopping they ran through the traffic. Just as they started to go through I told them to wait a minute. Mr. Berry was driving and he was looking at me. I got hold of the car. It was about the length of the Park Theatre on Capitol avenue, before I could get him stopped. Had to pull my gun to stop them. The car was an open Marmon Car. I don't know whether a seven or five passenger car. The curtains were up. I talked to the driver and he opened the door and I looked inside the car. He said here is some money if you will not search the car. Mr. Berry said that. I placed him under arrest at the time. I saw gunny sacks in there. After the conversation occurred I looked in the back. At the time the door was opened and I looked in the back, I did not have any warrant for the arrest of either one of the defendants. And I did not have a search warrant to search the automobile before looking into the car. I could see the gunny sacks and two cans and two jugs there. Before I made the arrest for violating the traffic rule, I had no knowledge that they had intoxicating liquor in the automobile. I saw two cans of what he said was alcohol, grain alcohol and mule whisky cut together. The two cans and two jugs each contained five gallons. Grain alcohol cut with mule was in the jugs. I had a conversation with Mr. Berry about the contents of these jugs and what was in the rear of the car. He said he bought the whisky near White river of some foreigner. He said he bought the liquor on Washington street near the river and had paid eighty dollars for the two cans and two jugs. He wanted to give me money and let him go. He offered me some money. He said he didn't want to be arrested again. That he was sentenced in Judge Anderson's court and that he had a case now pending in Muncie. The certificate of title on the ma-

chine was made out to Hugh Berry. I am sure Mr.
Berry's name was on there. I don't remember any
other name on there. These matters concerning which
I have testified occurred in Marion county, State of
Indiana, within the last six months, on or about De-
cember 24, 1923. It was about 2:35 p.m. My atten-
tion was first attracted to the automobile when it
pulled around me in Washington street. I was in the
center of the street and did not have any semaphore,
only the light on Washington street. He turned north
on Capitol avenue. I hollered at him just when he
started up opposite me. He heard me. I motioned
for him to stop and I told him to stop. He said some-
thing to Mr. Cambron and kept on going. I tried to
get on the car. I had hold of the car when it stopped.
I asked him if he heard what I said. He said, 'No.' I
asked him why he went through the traffic signal. And
he said, 'don't search the car.' I could see the gunny
sacks but could not see through the gunny sacks. I
searched him to see if he had a gun. Standing on the
ground where I first arrested him I could see the gunny
sacks in the back. He opened the door of the car and
got out. He came out backwards. Neither one of the
men in the car had a gun."

Two other police officers who assisted in the arrest
testified to substantially the same facts as Mr. Viles.

The appellant, Hugh Berry, on his own behalf testi-
fied as follows: "My name is Hugh Berry. I reside
in Muncie with my mother. She is an invalid. I am
a mechanic and work on automobiles. I have a shop
of my own in the rear of my house. On December 24,
I was arrested near Capitol avenue and Washington
street by these officers. No warrant was read to me at
the time of my arrest. I didn't see the officer when he
motioned for me to stop at Capitol and Washington
streets. I first knew the officer wanted me to stop when

he was on the side of the car. I stopped immediately. I came up from the west on Washington street. I wanted to go north on Capitol. I started on and drove about the length of the car and this gentleman was on the car and told me to stop and I stopped. The first thing he said was, 'What have you got in this car?' I said, 'Nothing.' He said, 'Yes, you have.' He said, 'Give me your gat.' I said, 'I have not got any.' He said, 'Don't you carry one?' I said, 'No.' He searched me. I had $4 and I said that is all I have got and if you want that Cap. you can have it. He called another man and took me down. I did not have a gun on my person or in my car. My name was on the certificate of title to the car. I was buying the car from the Zuber Company, a taxi company in Muncie. My purpose in coming to Indianapolis on December 24, was, I wanted to get a hub from the Nordyke and Marmon people. I had ordered it and it had not come and I came over to get it. I didn't come for the purpose of buying liquor. I have never been convicted for violating the liquor law." Questioned by the court, the appellant said: "I had not been convicted before Judge Anderson for a liquor offense." The court asked the following questions of the defendant at this point:

"Q. Did you not tell the officer you had been convicted before by Judge Anderson. A. Not for liquor.

"Q. What was it for? A. For seeing a policeman drunk and not telling it.

"Q. What did you get? A. Four months.

"Q. What was the charge? A. Conspiracy.

"I went to the Nordyke and Marmon plant to see about the hub. I had a conversation with a colored fellow regarding the purchase of liquor. I don't know his name. I did not purchase any liquor at the Marmon plant. There is a case pending against me now in Muncie for violating the liquor law. It has not been

decided. I have lived in Muncie about seventeen years. I worked on automobiles; before I went into the automobile business, worked in a grocery store and before that I worked in a glass factory. After leaving the grocery store I went to working on automobiles. Went to work for Mr. Clark. Worked for him about two years until I went in the army. Was in the army a little over a year. Was overseas and at the front. I have an honorable discharge. I was with 809 Pioneer Company. I am a negro. It was a colored fellow who told me where I could buy liquor and he went with me to a place to get it out on Washington street. I purchased it from a foreigner. A little short foreigner. I simply bought it. It was a foolish purchase."

It appears from this evidence that the appellant voluntarily disclosed the contents of the automobile regardless of any search thereof and testified concerning the transaction fully. The finding is sustained by sufficient evidence, furnished by the appellant himself, and there is no evidence from which this court can find that there was an unlawful search of appellant's automobile. *Haverstick* v. *State* (1925), 196 Ind. 145, 147 N. E. 625; *Jameson* v. *State* (1925), 196 Ind. 483, 149 N. E. 51.

Judgment affirmed.